J-A05037-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| BETSY A. ZIMMERMAN AND GLENN S. SINKO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| | : | No. 1263 WDA 2019 |
| ONE ADAMS PLACE, L.P., ADAMS PLACE PROPERTIES, INC., AND A.R. BUILDING COMPANY, INC. | : | |

Appeal from the Order Entered July 29, 2019
In the Court of Common Pleas of Butler County Civil Division at No(s):
AD-17-10197

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    FILED MARCH 11, 2020

Betsy A. Zimmerman (Zimmerman) and Glenn S. Sinko (Sinko), who are husband and wife, appeal from the order of the Court of Common Pleas of Butler County (trial court) granting the motion for summary judgment filed by One Adams Place, L.P., Adams Place Properties, Inc., and A.R. Building Company, Inc. (Owners).  We reverse.

We take the following factual background and procedural history from the trial court's opinion and our independent review of the certified record. The Owners own an office-building complex with an adjoining parking lot in Butler County, Pennsylvania.  Zimmerman and Sinko are lawyers who own the

_____

[*] Retired Senior Judge assigned to the Superior Court.

law firm, Zimmerman & Sinko, and, at the time of the incident underling this appeal, were tenants at the Owners' office building and had use of the building's parking lot.

The parking spaces in the lot are lined to designate proper parking spaces. On March 9, 2015, at approximately 5:30 p.m., as Zimmerman walked through the parking lot toward her car parked in one of the designated parking spaces, a cracked and raised section of asphalt caught her left foot, causing her to trip and fall, resulting in a fracture of her left wrist and scrapes to her hands and knees. Zimmerman did not see the raised portion of the asphalt nor were there any signs warning of unsafe conditions in that area. The Owners did not discover the defect until after Zimmerman's incident.

Immediately after her fall, Zimmerman telephoned Sinko, who was still inside their law office. Sinko went outside to the parking lot where Zimmerman was located sitting on the ground. She identified her location as the spot where she had fallen. Sinko photographed the area identified by Zimmerman. Sinko and Zimmerman then went to the Passavant Hospital emergency room to obtain medical care for Zimmerman. Later that same evening, Sinko and his son returned to the scene and measured the crack in the parking lot asphalt where Zimmerman fell and determined that the elevation difference measured 1¼ inch.

The Owners employed one maintenance man, Charles Sprague (Sprague).[1] As a part of his duties, Sprague walked the parking lot on a weekly basis when he would "look around" to "make sure everything's okay." (Sprague Deposition, at 14). He would do any necessary cleanup and report any other needed lot maintenance to his boss, but parking lot maintenance like sealing cracks would be "subbed out" to an appropriate company. Sprague did not detect the crack in the asphalt that allegedly caused Zimmerman's fall. Zimmerman filed a Complaint, later amended, against the Owners, asserting that they breached a duty owed to a business invitee by allowing the elevated condition of the parking lot to exist, resulting in injuries to Zimmerman. Sinko also filed a loss of consortium claim.

After the pleadings were closed, the Owners filed a Motion for Summary Judgment, alleging that the "discrepancy" in the elevation of one discrete part of the parking lot was "trivial" as a matter of law. It also contended that because the defect was in a remote portion of the parking lot that had minimal pedestrian traffic, it could not be charged with negligence for all defects in pavement, even if they were not trivial.

After argument, the trial court granted Owner's Motion for Summary Judgment finding that the 1¼ inch height differential in the parking lot

---

[1] Mr. Sprague has been A.R. Building Company's maintenance man for eight years. (See Sprague Deposition, at 9).

pavement was "slight and clearly of a trivial nature" and that "[i]t would be unreasonable and unpractical to expect" the Owners to keep the lot "free from such a minor crack in the pavement." (Trial Ct. Op., at 8-9). Although it also indicated that Zimmerman parked in a "distant portion of the lot which had minimal pedestrian traffic," it did not grant the motion on this basis because it acknowledged that she did fall in a designated parking area of the lot. (Id. at 8). Zimmerman and Sinko timely appealed[2] and both they and the trial court complied with Rule 1925. See Pa.R.A.P. 1925.

In their appeal, Zimmerman and Sinko contend that the trial court erred in finding that Owners were not negligent because the 1¼-inch pavement defect was trivial. They contend that the defect was not trivial and Owners breached a duty it owed to them as business invitees by failing to discover and correct the raised asphalt on which Zimmerman tripped causing her to

_____

[2] Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Renna v. PPL Utilities, Inc., 207 A.3d 355, 367 (Pa. Super. 2019) (citations omitted).

break her wrist. Before addressing the merits, to give context, we must briefly discuss the duty of property owners to tenants for defects in their property.

1.

To hold a defendant liable for negligence, a plaintiff must prove: "(1) a legally recognized duty that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff." Truax v. Roulhac, 126 A.3d 991, 997 (Pa. Super. 2015). The level of duty owed to an individual depends on her status. See id.

Here, it is undisputed that Zimmerman, a tenant of the Owners, was a business invitee. In determining the scope of the duty owed by a property owner to a business invitee, Pennsylvania courts have adopted Section 343 of the Restatement (Second) of Torts which provides:

> With respect to conditions on the land which are known to or discoverable by the possessor, the possessor is subject to liability only if he,
>
>     (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
>
>     (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
>     (c) fails to exercise reasonable care to protect them against the danger.

Reinoso v. Heritage Warminster SPE LLC, 108 A.3d 80, 85 (Pa. Super. 2015) (en banc), appeal denied, 117 A.3d 298 (Pa. 2015) (quoting Restatement (Second) of Torts, § 343). Importantly:

> An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore an invitee is not required to be on the alert to discover defects which, if he were a mere licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering.

Id. (quoting Restatement (Second) of Torts § 343, comment d).

However, when a defect is "trivial", because it does not involve an unreasonable risk of harm, then a possessor of land is not responsible for discovering, warning or fixing that defect. In Mull v. Ickes, 994 A.2d 1137, 1140 (Pa. Super. 2010), we set forth the general rule regarding trivial defects stating that:

> Although property owners have a duty to maintain their sidewalks in a safe condition, property owners are not responsible for trivial defects that exist in the sidewalk. Our courts have held that an elevation, depression, or irregularity in a sidewalk or in a street or highway may be so trivial that, as a matter of law, courts are bound to hold that there was no negligence in permitting such depression or irregularity to exist. (citations omitted).

We went on to note that there is "[n]o definite or mathematical rule that can be laid down as to the depth or size of a sidewalk depression to determine whether the defect is trivial as a matter of law." Id. (citations and internal quotation marks omitted). What is trivial is determined primarily by the size of the irregularity, "[t]he extent of irregularity which may be present in a

- 6 -

street . . . varies with other circumstances, such as amount of travel, actual location of the rise or depression, character of material with which the pavement or walk is constructed, nature of the irregularity, and other circumstances." Henn v. City of Pittsburgh, 22 A.2d 742, 743 (Pa. 1941) (internal quotation marks and citations omitted); see also Mull, 994 A.2d at 1141 (the fact that a defect is located in line of travel is relevant in determining a defendant's negligence). If the defect is not obviously trivial, the question of negligence then must be submitted to a jury.

2.

The issue in this appeal then is whether the pavement defect of 1¼ inch in a parking lot where Zimmerman, a business invitee, was traversing to get to her parked car is "trivial" as matter of law. While other factors are mentioned, both parties rely on cases addressing the size of the irregularity as determining whether it is trivial or not.

While we have stated that there is no mathematical formula, Owners suggest that case law has held that a discrepancy in elevation less than two inches is per se trivial, and, as a matter of law, does not constitute negligence. It cites to the following cases: Bosack v. Pittsburgh Railways Co., 189 A.2d 877, 879-81 (Pa. 1963) (holding a depression or irregularity of cobblestones with about 1½ or two inches, as a matter of law, does not constitute negligence); Harrison v. City of Pittsburgh, 44 A.2d 273, 273 (Pa. 1945) (a two inch elevation of a manhole cover in a sidewalk was slight

and of trivial nature); McGlinn v. Philadelphia, 186 A. 747 (Pa. 1936) (the difference in the level of the ends of two abutting curbstones of a ½ inch constitutes reasonable safety and appellant failed to prove any act of actionable negligence); Newell v. Pittsburgh, 123 A. 768 (Pa. 1923) (the variation of 1½ inches between adjoining ends of flagstones in a street crossing is not evidence of negligence imposing liability for injuries to a pedestrian who fell at that location because a city is not required to maintain flagstones in street crossings in a perfectly level and even condition).

We note, though, that those involve irregularities in the public street or sidewalk, where municipalities are normally only secondarily liable and do not involve concrete or asphalt paving. Furthermore, individuals traversing public streets and sidewalks to get from one place to another are considered licensees to whom property owners have a lessor standard of care than they have to business invitees.[3] See Restatement (Second) of Torts § 342; See

_____

[3] Restatement (Second) of Torts § 342 provides:

> A possessor of land is liable for physical harm caused to a licensee by a condition on the land if, but only if:
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

also Palange v. City of Philadelphia, 640 A.2d 1305 (Pa. Super. 1994); Robinson v. City of Philadelphia, No. 1255 C.D. 2011, 2012 WL 8678953, at *3 (Pa. Cmwlth. 2012).

However, Zimmerman and Sinko cite to other cases where similar defects that were less than two inches were held not to be trivial. See Massman v. City of Philadelphia, 241 A.2d 921, 924 (Pa. 1968) (case sent to the jury where plaintiff-licensee was injured on a ½ inch deep, 6 inch wide, 28 inch long crack in the sidewalk); Breskin v. 535 Fifth Ave., 113 A.2d 316, 318 (Pa. 1955) (reversing nonsuit against a property owner where the trial court found a 1½ deep defect in sidewalk trivial, and plaintiff, who was a licensee, might not have been able to see it); Henn, 22 A.2d at 744 (affirming that hole sufficient to catch shoe in direct line of travel of licensee on sidewalk presents the jury a question regarding negligence); Reinoso, 108 A.3d at 89-90 (summary judgment finding defect trivial reversed where plaintiff was business invitee and pavement height deferential of 5/8 inches exceeded safety standard and maintenance company considered it a hazard); Mull, 994 A.2d at 1140-41 (summary judgment reversed where 1½ inch deep and 2 inch wide defect pavement in direct line of travel of licensee to building was not "indisputably trivial").

_____

      (c) the licensees do not know or have reason to know of the condition and risk involved.

To determine whether a defect is trivial depends on the totality of the circumstances. As the cases relied on by the parties show, there is a fine line between what is considered trivial and what is considered not trivial. This falls within what our Supreme Court stated in Breskin, 113 A.2d at 317-18, as "a shadow zone where such question must be submitted to a jury whose duty it is to take into account all the circumstances. To hold otherwise would result in the court ultimately fixing the dividing line to the fraction of an inch, a result which is absurd."

Zimmerman, a business invitee, was expected to travel across the parking lot to her parked vehicle. Because the defect is in this "shadow zone" between a trivial and non-trivial defect, it is for a jury to decide whether the depth of this particular defect is trivial, if the path used by Zimmerman was in a trafficked area of their property, as well as if the Owners had a duty to discover the defect. Accordingly, because Owners are not entitled to judgment as a matter of law, we reverse the court's order granting summary judgment in their favor.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2020

- 10 -